IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DERRICK X. SHIELDS                                                      PETITIONER
ADC #128202

V.                                    NO. 5:04cv00344 JLH-JWC

LARRY NORRIS, Director,                                                 RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Derrick X. Shields, an Arkansas Department of Correction inmate, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket entry #1). Respondent concedes that Petitioner is in his custody and has exhausted all nonfutile state remedies, *see id.* § 2254(a-c), but contends that his claims should be dismissed for other reasons (docket entry #8).  Petitioner has replied (docket entry #11).  For the reasons that follow, the petition should be **dismissed**.

I.
Background[1]

Laurie Troup was working at a video store on the evening of November 18, 1999, when three young men entered the store, demanded that she give them the store's money,

---

[1]The factual and procedural background is drawn from the record of Petitioner's state court proceedings, submitted as Resp't Ex. 1 to docket entry #9.  All record references are to this exhibit. Respondent's other exhibits are also attached to docket entry #9.

and then shot her in the face with a sawed-off .410-gauge shotgun when she refused to hand over the money.  Petitioner was not linked to the murder and robbery at the time.

On March 26, 2001, Petitioner's father surrendered him to police on an unrelated warrant for burglary and theft.  On that day, Det. Scott Adams advised Petitioner of his *Miranda*[2] rights in connection with the charges, and Petitioner, who was then fifteen, executed a waiver of his rights and agreed to discuss the matter.  As a result of this interview, Petitioner's father consented to a search of his home and there, in Petitioner's bedroom, the police found a note containing information about a robbery.  Adams discussed this note with his supervisor, then later advised Petitioner again of his *Miranda* rights.  Petitioner executed another waiver of rights and gave another statement the same day, March 26, 2001.  Adams asked Petitioner about the Troup robbery and murder during this interview.  Petitioner implicated Kuntrell Jackson in the robbery and murder and said that Jackson had used a .410 shotgun to kill Troup.

After this statement, Adams again spoke to his supervising detective and the following day, March 27, 2001, Petitioner was twice advised of his *Miranda* rights, executed two more waivers, and gave two more statements.  This time, Petitioner admitted that he was involved in the Troup robbery and murder, had supplied the shotgun, and implicated Jackson, Travis Booker, and Jackson's cousin.  In a tape-recorded statement,[3] Petitioner said that he and the others talked about "going to do a lick," that they all walked to the video store and went in, that Jackson asked for money and pointed the shotgun at Troup,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] A 33-page transcript of the taped statement appears in the record.  (R. 468.)

that he (Petitioner) went outside the store to see if the police were coming, that he then heard a gunshot, and that he looked in and saw a lot of blood and Troup's legs on the ground.  He said they all ran "straight to the projects," as they had planned.  Petitioner took the police to a ditch where he thought the gun had been thrown, but they were unable to locate it.  On March 30, 2001, Booker gave a statement implicating Petitioner as the shooter and, at Petitioner's trial, Booker testified consistently with his statement.

Following his jury trial in April 2003 in the Circuit Court of Mississippi County, Petitioner was convicted of capital murder and aggravated robbery.  He was sentenced to life imprisonment without parole.  (R. 19-21.)

In a direct appeal to the Arkansas Supreme Court, Petitioner raised the following claims: the trial court erred (1) in admitting Petitioner's statements into evidence, (2) by excluding testimony that the victim's father was a drug informant, and (3) by allowing testimony about a note found at Petitioner's residence and other crimes.  (Resp't Ex. 2, at vi, Br-1 to Br-15).  His convictions were affirmed.  *Shields v. State*, 166 S.W.3d 28 (Ark. 2004) (Resp't Ex. 3).  There is no evidence or allegation that Petitioner sought any post-conviction relief in state court.

Petitioner then filed this federal habeas petition, advancing the following claims:

1. The trial court erred in admitting his statements into evidence;

2. The trial court abused its discretion in excluding testimony that the victim's father was a drug informant; and

3. The trial court abused its discretion in allowing testimony about a note found at Petitioner's residence and about other crimes.

II.

Ground 1

In Ground 1, Petitioner restates the first claim from his direct appeal: his statements made to police should have been suppressed because (1) he was not advised of his *Miranda* rights in "the juvenile's own language" as required by Ark. Code Ann. § 9-27-317; (2) he was not advised that he had the right to have a parent present nor was he afforded the right to consult with his father, as required by § 9-27-317; (3) he did not fully understand his rights, specifically that he had the right to a lawyer, that he did not have to make a statement, and that a lawyer would be appointed free of charge; (4) the Arkansas cases holding that § 9-27-317 does not apply to juveniles charged as adults should be overruled; (5) § 9-27-317's protections should apply because police first questioned him on the unrelated burglary charge, for which he could only be charged as a juvenile, then expanded their investigation to include capital murder and aggravated robbery, for which he was charged as an adult; and (6) his Fifth Amendment right to remain silent, his Sixth Amendment right to an attorney, and his Fourteenth Amendment right to due process were eroded by an interrogation that began for offenses for which he could only be charged as a juvenile.  Respondent contends that these claims present matters of state law and that this Court is bound by the Arkansas Supreme Court's resolution of the suppression issues in Petitioner's direct appeal.  *See Shields*, 166 S.W.3d at 30-32.

A.     State Court Decision.

The record shows that, before trial, Petitioner filed a motion to suppress all statements he made to police between the time of the murder on November 18, 1999, and March 28, 2001.  (R. 8-13.)  After a pretrial evidentiary hearing (R. 29-71), the trial court

denied the motion to suppress, finding that Petitioner possessed sufficient intellect to understand the questioning and to make appropriate responses, and that he did so.  (R. 69.)  The trial court further found that the recently added statutory requirements upon which Petitioner relied were not in effect at the time of interrogation.  (R. 69-70.)  *See* Ark. Code Ann. § 9-27-317(i)(2) (2002) (requiring that law enforcement officers advise a juvenile of his *Miranda* rights "in the juvenile's own language" and requiring that the juvenile be advised of his right to have a parent present during questioning).  The trial court also found that Petitioner did not request to speak to his father during interrogation and that the then-existing provision of § 9-27-317, requiring a parent's presence upon request, thus did not come into play.  (R. 70-71.)

On direct appeal, Petitioner again argued that his statements should have been suppressed because the officers did not comply with the provisions of § 9-27-317, concerning the giving of *Miranda* warnings in the juvenile's own language, advising him of his right to have a parent present during interrogation, and allowing him to consult with his father.  (Resp't Ex. 2, Br-1 to Br-8.)  The Arkansas Supreme Court rejected Petitioner's arguments as follows:

> Shields acknowledges that this court had held that § 9-27-317 does not apply to juveniles who are charged as adults, *see Jenkins v. State*, 75 S.W.3d 180 ([Ark.] 2002), and *Ray v. State*, 40 S.W.3d 243 ([Ark.] 2001), but suggests these cases should be overruled.  However, Shields offers no persuasive authority for why our precedent should be overturned; therefore, we decline to do so.  *See Riggs v. State*, 3 S.W.3d 305 ([Ark.] 1999).  Further, those cases make it clear that the provisions of § 9-27-317(h) & (i) "are applicable only to matters being considered by the juvenile court."  *See Jenkins*, 75 S.W.3d 180.  As the felony information charging Shields was not filed in juvenile court, he has no right to assert that his father should have been present during his questioning.  *See id*; *see also Ring v. State*, 894 S.W.2d 944 ([Ark.] 1995) (when a young offender is ultimately charged in circuit court, the failure of law enforcement officers to obtain parental consent to

waiver of right to counsel, pursuant to § 9-27-317, does not bar admissibility of confession).

To the extent we consider Shields's suppression motion at all, we affirm the trial court's ruling. The trial court noted that, although both Shields and his father testified at the suppression hearing that Shields had asked to speak to his father, the court found the testimony of the officers – who stated that no such request was made – more credible. The evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. *Wright v. State*, 983 S.W.2d 397 ([Ark.] 1998). Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused since he or she is the person most interested in the outcome of the proceedings. *Winston v. State*, 131 S.W.3d 333 ([Ark.] 2003).

Additionally, when asked at the suppression hearing whether he understood the rights form, Shields stated, "Yeah." He further stated that, before this encounter with the police, he had been "to the police department" twice, that he was advised of his rights on those occasions, that he had completed the eighth grade, and that he had no difficulty reading. He also admitted that he understood the statement, "you have the right to remain silent," and agreed that, during the tape-recorded statement he gave to police, he stated that he understood his rights and that the statement was of his own free will. Given the totality of the circumstances, it cannot be said that the trial court was clearly erroneous in ruling that Shields's confession was knowing and intelligent, and that Shields did not ask to speak to a parent. We hold the trial court did not err in denying Shields's motion to suppress.

*Shields*, 166 S.W.3d at 31-32 (parallel citations omitted).

B.     Analysis.

In reviewing a habeas petition, this Court is limited to deciding whether a conviction has violated the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241, 2254; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court lacks authority to review a state court's interpretation and application of state law, for "federal habeas corpus relief does not lie for errors of state law ... [and] it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions." *Id.* Therefore, it is not enough for Petitioner to argue that the Arkansas state courts misapplied any provisions of state law. *Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006). The Arkansas Supreme Court held that § 9-27-317 did not apply to the interrogation of Petitioner because he was charged as an adult for the offenses at issue. This interpretation of state law is binding here. *See Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) ("As the supreme judicial authority of the state, [the Arkansas Supreme Court] decides what state law is, an issue which cannot itself be reviewed in a federal habeas proceeding.").

To the extent that the Arkansas Supreme Court decided any federal constitutional issues adversely to Petitioner, the question here is whether that adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); **or** (2) "involved an unreasonable application" of clearly established federal law, *id.*; **or** (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). In its review, a federal habeas court must presume any factual findings made by the state courts to be correct unless rebutted by clear and convincing evidence. *Id.* § 2254(e)(1).

Clearly established federal law holds that, to secure the Fifth Amendment privilege against self-incrimination, police officers must inform a suspect of his rights before initiating a custodial interrogation, and the suspect's waiver of those rights is valid only if made

voluntarily, knowingly and intelligently.  *Miranda*, 384 U.S. at 444, 478-79.  A waiver is voluntary if it "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  A waiver is knowing and intelligent if made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*  The totality of the circumstances must be examined in determining whether a suspect had the requisite level of comprehension to knowingly waive his rights and whether the waiver was voluntary. *Id.* The requirements of *Miranda* do not apply differently to juveniles than they do to adults. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979) ("This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved.").

In reviewing the trial court's ruling on the admissibility of Petitioner's statements, the Arkansas Supreme Court stated that it was making an "independent determination based upon the totality of the circumstances." *Shields*, 166 S.W.3d at 30, 32.  Although citing state cases, the standard applied is consistent with the applicable United States Supreme Court precedents.[4]  *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (it is not necessary for the state court to cite, or even be aware of, applicable United States Supreme Court opinions as long as "neither the reasoning nor the result of the state-court decision contradicts them").  Neither party contends that the United States Supreme Court has

---

[4]Most of the cited cases can be traced back to the relevant United States Supreme Court decisions. *E.g., Shields*, 166 S.W.3d at 30, citing *Cox v. State*, 47 S.W.3d 244, 250-51 (Ark. 2001), quoting *Riggs v. State*, 3 S.W.3d 111, 119 (Ark. 1999), citing *Moran*, which relied on *Miranda* and *Fare*.

addressed a case with facts that are "materially indistinguishable" from those involved here.   Therefore, the state supreme court's decision regarding the admissibility of Petitioner's statements was not "contrary to" applicable United States Supreme Court law under § 2254(d)(1).   *See Williams v. Taylor*, 529 U.S. 362, 405-06, 412-13 (2000) (state court decision is "contrary to" federal law if it applies a rule that contradicts the controlling Supreme Court authority or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a Supreme Court case, but nonetheless reaches a different result).

Furthermore, as explained below, the state supreme court's decision, viewed objectively, did not unreasonably apply those federal constitutional principles to the facts of Petitioner's case.   *Id.* at 409, 413 (state court's decision involves "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case"; habeas court must ask whether state court's application was "objectively unreasonable").

First, this Court is bound by the factual finding of the trial court (R. 70), as adopted by the state supreme court, *Shields*, 166 S.W.3d at 31, that Petitioner did not ask to speak to his father.  The state courts clearly discredited Petitioner's testimony to the contrary and instead accepted the testimony of the officers that no such request was made.   *See Perry v. Kemna*, 356 F.3d 880, 885 (8th Cir.), *cert. denied*, 543 U.S. 1022 (2004).  Petitioner has presented no evidence, much less anything clear and convincing, to rebut this factual determination.  Moreover, the Court has carefully reviewed the testimony of Petitioner and the officers from the suppression hearing (R. 44-45, 50, 54-56, 65, 68), as well as the

transcript of Petitioner's tape-recorded statement given on March 27, 2001 (R. 468), and finds that the credibility determinations are reasonable in light of the evidence presented.

Similarly, this Court is also bound by the state courts' factual determination that Petitioner understood the *Miranda* warnings explained to him. *Thai v. Mapes*, 412 F.3d 970, 976 (8th Cir.), *cert. denied*, 126 S. Ct. 746 (2005). The state courts' finding was based on evaluation of the suppression hearing testimony of the officers, Petitioner and his father, as well as a psychological report and Petitioner's statements made in his tape-recorded interview with officers. (R. 29-71.) Petitioner has not rebutted the factual finding here and, again, the finding is reasonably supported by the state court record.

In light of these presumptively correct factual findings, the Arkansas Supreme Court did not unreasonably apply the applicable federal law in determining that Petitioner's waiver was voluntary, knowing and intelligent. As stated, the Supreme Court has directed utilization of the "totality of the circumstances" approach in determining whether there has been a valid waiver, even where interrogation of juveniles is involved. *Fare*, 442 U.S. at 725. This approach mandates inquiry into all the circumstances surrounding the interrogation, including: the juvenile's age, experience, education, background, intelligence, and whether he had the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. *Id.*

In upholding the trial court's finding of voluntariness, the Arkansas Supreme Court looked at several factors: Petitioner's testimony at the suppression hearing that he understood the rights form and the right to remain silent; his testimony about two previous encounters with the police, where he was advised of his rights; his testimony about completing the eighth grade and having no difficulty reading; and his acknowledgment

during his tape-recorded statement that he understood his rights and was giving the statement of his own free will.  *Shields*, 166 S.W.3d at 31-32.  These findings are supported by the suppression hearing transcript and the transcript of Petitioner's taped statement.  There is no allegation or evidence of any coercive or threatening police tactics. Under all these circumstances, it was not an objectively unreasonable application of clearly established federal law for the Arkansas courts to conclude that Petitioner's waivers and statements were knowing, intelligent and voluntary,[5] and that his statements were thus admissible at trial, nor were these conclusions based on an unreasonable determination of facts.

In his reply to Respondent's response, Petitioner also argues (1) that the interrogations were illegal under *Dunaway v. New York*, 442 U.S. 200 (1979), and *Brown v. Illinois*, 422 U.S. 590 (1975), because *Miranda* warnings do not necessarily purge the taint of an illegal arrest or detention, and (2) that his rights under the Arkansas Constitution and Arkansas's rules of criminal procedure were violated.  As stated earlier, this Court cannot review alleged state law violations.  Any federal constitutional issues in these arguments are barred from federal habeas review because Petitioner failed to specifically raise them as claims in his state court proceedings or, if arguably raised at the trial level, he failed to include them in his direct appeal.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (before seeking federal habeas relief, petitioner must first fairly present each claim to each appropriate state court); *Thai*, 412 F.3d at 977 n.3 (federal habeas court "will not judge the reasonableness of [a state court's] determination based on an argument that was

---

[5]The standard for voluntariness of a waiver is the same as the standard for voluntariness of a confession.  *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986).

never made to that court"). The federal claims are, therefore, procedurally defaulted and Petitioner has not demonstrated that his default should be excused. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (habeas review of procedurally defaulted claims is barred unless petitioner shows "cause" for default and "actual prejudice" from the alleged violation of federal law, or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice").

Ground 1 does not entitle Petitioner to federal habeas relief and should be dismissed.

## III.
## Ground 2

Next, Petitioner argues that the trial court erred in excluding evidence that the victim's father (William Utley) had been a drug informant, which deprived him of the opportunity to offer the jury alternate individuals with motive to commit this murder and aggravated robbery. He says the evidence would have added weight to his alibi defense. In support, he relies on three Arkansas Supreme Court cases: *Larimore v. State*, 877 S.W.2d 570 (Ark. 1994); *Zinger v. State*, 852 S.W.2d 320 (Ark. 1993); and *Echols v. State*, 936 S.W.2d 509 (Ark. 1996). Respondent argues that this is a matter of state evidentiary law, was not identified as a federal constitutional issue in state court, and is not presented here as a constitutional question. Respondent further argues that, even if considered as having been identified and addressed as a constitutional issue, the state court's resolution

would be due deference, as that resolution was not contrary to or an unreasonable application of federal law under § 2254(d).[6]

A.   State-Court Decision.

In his direct appeal, Petitioner argued that the trial court erred in granting the state's motion in limine seeking to exclude the testimony at issue.  The Arkansas Supreme Court stated:

> We have held that a defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party.  Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.  *Zinger v. State*, 852 S.W.2d 320 ([Ark.] 1993) (citing *State v. Wilson*, 367 S.E.2d 589 ([N.C.] 1988)).  This rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability; evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt.  There must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.   *Burmingham* [*v. State*, 27 S.W.3d 351 (Ark. 2000)]; *Zinger*, *supra* (citing *People v. Kaurish*, 52 Cal.3d 648, 276 Cal.Rptr. 788, 802 P.2d 278 ([Cal.] 1990)).
>
> On appeal, Shields notes that two drug dealers were sent to jail on the basis of Utley's information, and he urges that it "takes no great leap of insight to conclude that drug dealers who are arrested and sent to the penitentiary based upon the testimony of a drug informant could and would seek revenge on that informant."  However, even assuming this "leap of insight" suggests the guilt of a third party, it plainly does no more than create an inference or conjecture as to that third party's guilt.  Even though the evidence regarding the drug dealers may have demonstrated that someone else may have had a motive to commit Troup's murder, there was no direct or circumstantial evidence linking the drug dealers to the actual perpetration of this particular crime.  The trial court did not abuse its discretion in granting the State's motion in limine.

*Shields*, 166 S.W.3d at 32 (parallel citations omitted).

_____

   [6]The facts underlying Grounds 2 and 3 are undisputed; therefore, § 2254(d)(2) is inapplicable.

B.      Analysis.

In the habeas context, questions regarding admissibility of evidence are matters of state law.  *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007).  Evidentiary errors at a state trial will form the basis for federal habeas relief only if the state court's rulings "infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process."  *Id.*

The record confirms that Petitioner's arguments in state court were based only on state law.   (R. 14, 71-80; Resp't Ex. 2, Br-8 to Br-12.)  In presenting his argument to the Arkansas Supreme Court, Petitioner's appellate brief did not cite the Due Process Clause or any other provision of the United States Constitution, any United States Supreme Court cases, or any state cases relying on a United States Supreme Court case or a federal constitutional provision.  His arguments in this federal petition simply reiterate his state arguments, making no reference to any federal constitutional principles or cases.

This Court cannot review any argument that the state trial court erroneously excluded the disputed evidence pursuant to state evidentiary rules or that the state supreme court erroneously applied state law in reviewing the evidentiary issues on appeal. Nor has Petitioner identified any relevant Supreme Court law that he thinks the Arkansas courts acted contrary to or applied unreasonably.  *See Evenstad*, 470 F.3d at 783 (to obtain habeas relief, petitioner "must be able to point to the Supreme Court precedent he thinks the ... state courts acted contrary to or applied unreasonably").

Even if the Court finds that a federal constitutional issue was raised and decided in Petitioner's state-court proceedings, and that such an issue has been presented for review here, Petitioner would not be entitled to federal habeas relief.

Evidentiary errors amount to a denial of due process if they are "so egregious that they fatally infected the proceedings and rendered [a defendant's] entire trial fundamentally unfair." *Garcia*, 474 F.3d at 1017.   The United States Supreme Court has "very narrowly" defined the category of infractions that violate the due process test of fundamental fairness. *Dowling v. United States*, 493 U.S. 342, 352 (1990).   Additionally, because the United States Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731-32 (2006). However, under "well-established rules of evidence," trial judges are constitutionally permitted to exclude evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 1732.  As an example, the Supreme Court cited the "widely accepted" rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged." *Id.* at 1733.

To support its statement in *Holmes* that rules regarding evidence of third-party guilt are "widely accepted," the United States Supreme Court listed decisions from more than twenty states, including the Arkansas Supreme Court's decision in Petitioner's direct appeal. *Id.*  In contrast, the *Holmes* Court disapproved a state's rule that "radically changed and extended" the accepted rule by shifting the trial court's focus to the ostensible strength of the prosecution's case, rather than the probative value or potential adverse effects of the defendant's third-party guilt evidence. *Id.* at 1733-35.

Here, Petitioner's proffered evidence in the trial court consisted of testimony from a police officer that the victim's father was a drug informant for the Blytheville Police Department before the murder, that the father had set up an operation that resulted in the arrest of two individuals, and that the individuals ended up going to jail. (R. 74-79.)  In upholding exclusion of this evidence, the Arkansas Supreme Court found that the evidence did "no more than create an inference or conjecture as to that third party's guilt" and there was "no direct or circumstantial evidence linking the drug dealers to the actual perpetration of this particular crime."  *Shields*, 166 S.W.3d at 32.  This ruling did not infringe on the constitutional protections articulated in *Holmes* or the Supreme Court precedents relied upon in *Holmes*, and it was thus not contrary to or an unreasonable application of the applicable Supreme Court law.  Furthermore, exclusion of the evidence did not "fatally infect" the proceedings or render Petitioner's entire trial fundamentally unfair and thus did not amount to a denial of due process.  Federal habeas relief is not warranted.

Ground 2 should be dismissed.


## IV.
## Ground 3

For his last claim, Petitioner argues that the trial court erred in admitting testimony suggesting that he was involved in other crimes.  Again, Respondent contends that this is a matter of state evidentiary law which cannot be reviewed by a federal habeas court and that, if considered as having been identified and raised as a federal constitutional issue, the Arkansas Supreme Court's decision is entitled to deference under § 2254(d).

A.    <u>State Court Decision</u>.

At trial, Det. Adams testified that he went to Petitioner's home as part of an investigation into the burglary and theft of a Glock pistol and some rolled coins, crimes that were unrelated to the Troup murder and robbery for which he was on trial.  (R. 279.) Adams also testified that, while executing a search as part of the burglary investigation, he found a note which led him to think there may have been "a robbery planned."  (R. 289.) Adams said he took the note back to the police department and discussed it with his supervisor.  Adams then questioned Petitioner further, asking again about the note and then leading into questions about the video store crimes.  During these questions, Petitioner mentioned a gun of the specific gauge that had been used in the Troup murder. (R. 289-91.)  The trial court allowed this testimony over Petitioner's objection, finding it relevant because it explained why, during an investigation for an unrelated matter eighteen months after the Troup crimes, a police officer "suddenly picks up and starts questioning [Petitioner] about a homicide."  The court held that the evidence was admissible "to show the natural progression."  (R. 279-286.)

The Arkansas Supreme Court found that the trial court did not abuse its discretion in admitting this evidence, as follows:

> Shields argues that the testimony of Officer Adams had no independent relevance, because there was no issue about why Adams was questioning Shields.  Further, he argues that, to the extent that it was relevant, it was more prejudicial than probative of anything, and should therefore have been excluded under Ark. R. Evid. 403.  The State, on the other hand, argues that the testimony about the note indicated that Shields was motivated to commit crimes for pecuniary gain.  Thus, the State claims, information regarding the note was admissible for establishing Shields's motive and served as an answer to his alibi defense.

Adams's testimony was relevant in that it showed the jury how he developed his investigation. The trial court's ruling – that this evidence would show why this officer suddenly connected Shields to a murder that had occurred over a year and half ago – was not an abuse of discretion. Further, Adams's statements were not inherently prejudicial; he did not testify that the note described Shields's intent to rob the Movie Magic or to kill Troup. The testimony about the note was relevant, and its relevance was not substantially outweighed by the danger of unfair prejudice. Thus, the trial court did not abuse its discretion in allowing Adams to testify about the note.

*Shields*, 166 S.W.3d at 33 (footnote omitted).

B.  Analysis.

As he did in state court, Petitioner argues here that Adams' reference to other crimes had no independent relevance under Ark. R. Evid. 401, was not admissible for any purpose as evidence of "other crimes, wrongs, or acts" under Ark. R. Evid. 404(b), and that, even if relevant, should be excluded under Ark. R. Evid. 403 as having its probative value substantially outweighed by the danger of unfair prejudice.

A federal habeas court is prohibited from reviewing whether "other crimes" evidence was properly admitted by the state trial court pursuant to Ark. R. Evid. 404(b), which is simply a matter of state evidentiary law. *Sera v. Norris*, 400 F.3d 538, 547 n.8 (8th Cir.), *cert. denied*, 126 S. Ct. 283 (2005). Instead, the admission of this evidence will form the basis for federal habeas relief only when the evidentiary ruling was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005), *cert. denied*, 547 U.S. 1022 (2006). The United States Supreme Court has declined to hold that evidence of other crimes or wrongs is so extremely unfair that its admission violates fundamental conceptions of justice or the due process test. *Estelle*, 502 U.S. at 75 & n.5 (stating that Supreme Court was expressing no opinion as to whether a state law would violate due

19

process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime); *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting the argument that due process requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served).  This is particularly true where the trial court has guarded against possible misuse of such evidence through limiting instructions to the jury.  *Estelle*, 502 U.S. at 75;  *Dowling*, 493 U.S. at 353.  *See Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985) (a "crucial assumption underlying our constitutional system of trial by jury" is "that jurors carefully follow instructions").  Thus, there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting evidence of other crimes, wrongs or bad acts by the defendant.

Furthermore, the state court record demonstrates that Petitioner's trial was not rendered fundamentally unfair by admission of the evidence at issue.  The fairness of Petitioner's trial was safeguarded by the trial court's determination on the admissibility of the testimony in a bench discussion outside the hearing of the jury, as well as its utilization of Ark. R. Evid. 403's weighing analysis.  (R. 280-87.)  This standard for admissibility is the same as that used in the federal courts and is in accord with United States Supreme Court precedent.  *Osborne*, 411 F.3d at 917; *see* Fed. R. Evid. 403, 404(b); *Huddleston v. United States*, 485 U.S. 681, 685-88 (1988).  The state courts reasonably determined that the evidence was relevant to explain why police were prompted to investigate Petitioner in the first place.  The note itself was not admitted, and the officer never asserted that it mentioned plans of any specific robbery, and certainly not the robbery at the video store that culminated in Troup's murder.  The officer simply acknowledged that the note caused him to believe that an unspecified robbery had been planned.  The prejudicial impact was

minimized by the trial court's giving of a cautionary instruction to the jury that any reference to other crimes or bad acts should not be considered as evidence of guilt of the charged crime.  (R. 288.)[7]  Additionally, the trial court directed that any further references to the evidence be limited to a statement that police were at Petitioner's home "on other business" (R. 280), an admonition which was heeded by the prosecutor.  (*See* R. 304-05 [direct examination of other officer], 411 [stating in closing argument that Petitioner was at the police station because "he's got a problem," and that police searched his house and "discover[ed] another problem"], 436-37 [referring to "an unrelated incident").

In reviewing Petitioner's claim, the Arkansas Supreme Court again employed Rule 403's balancing test, finding that the note's relevance was not substantially outweighed by the danger of unfair prejudice.  Although the supreme court did not address the officer's testimony about the uncharged burglary and theft, it is clear from the bench discussions that the trial court clearly intended its admissibility ruling to encompass all testimony about other alleged crimes, and its cautionary instruction generically covered any reference to or mention of "other crimes, bad acts, or incidents."  (R. 280-88.)  In any event, the deference due under § 2254(d) extends to decisions of the state's trial or appellate courts. *See Harris v. Taylor*, 250 F.3d 613, 617-18 (8th Cir. 2001)

---

[7]The court stated: "All right, ladies and gentlemen, you've heard reference made to other crimes, bad acts, or incidents that are not related to the crime for which the defendant is charged. You should not give any credence or weight to the mention of another crime or a bad act as any evidence of guilt or innocence on the part of the defendant of the crime for which he's charged. In other words, you shouldn't consider that as evidence of guilt of the crime for which he's charged. Do you understand that? ... It's just incidental information, and it's not evidence of guilt or innocence of the crime that he's charged with."

Under these circumstances, the state courts' rejection of Petitioner's claim regarding the admissibility of "other crimes" evidence was not contrary to, or an unreasonable application of, any United States Supreme Court precedent under § 2254(d)(1).

Ground 3 should be dismissed.


V.

<u>Conclusion</u>

For the foregoing reasons, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1) should be dismissed in its entirety, with prejudice.

DATED this 5th day of July, 2007.


_____
UNITED STATES MAGISTRATE JUDGE